IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LUIS GARCIA AND ORLANDO PEREZ, on behalf of themselves, and all other plaintiffs similarly situated, known and unknown,<br><br>Plaintiffs,<br><br>v.<br><br>THE PROFESSIONAL LOCKSMITH, INC., AN ILLINOIS CORPORATION, ORON NURIEL, INDIVIDUALLY AND GAL DRUCKER, INDIVIDUALLY<br><br>Defendants. | No. 1:22-cv-<br><br>**Hon.**<br>**U.S. District Judge, Presiding**<br><br>Hon.<br>Magistrate Judge<br><br>*JURY DEMAND* |

## COMPLAINT

NOW COME Plaintiffs, **LUIS GARCIA AND ORLANDO PEREZ,** ("Plaintiffs", "Named Plaintiffs", or respectively, "Garcia" or "Perez"), by and through their attorneys, JOHN W. BILLHORN AND SAMUEL D. ENGELSON OF BILLHORN LAW FIRM, and for their Complaint against Defendants, **THE PROFESSIONAL LOCKSMITH, INC., ORON NURIEL, AND GAL DRUCKER** (each a "Defendant", collectively the "Defendants" or "TPLI"), state as follows:

**I.    NATURE OF ACTION**

1. This action is brought under the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.*, the Illinois Minimum Wage Law, 820 ILCS §105/1 *et seq*, the Chicago Minimum Wage Ordinance ("CMWO"), § 6-105-010, *et seq.* of the Municipal Code of Chicago and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1 *et seq.*

**II.     JURISDICTION AND VENUE**

2.     Jurisdiction arises under the provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 206-207, and for the supplemental state and municipal statutory claims, pursuant to 28 U.S.C. §1367. Venue lies in the Northern District of Illinois in that during all times relevant to the employment relationship, Plaintiffs performed work in this district and are each a resident of this district and Defendants are or were engaged in business in this district.

**III.    THE PARTIES**

3.     Defendant, **THE PROFESSIONAL LOCKSMITH, INC.** ("TPLI") is a business that provides locksmith services to corporate and residential customers, including emergency lock-out services for buildings and automobiles, lock and key installations, re-keying of locks, repairs, etc.[1]

4.     TPLI maintains a location in the Northern District of Illinois, located at 3400 N Kedzie Ave. in Chicago, Illinois.

5.     TPLI is an "enterprise" engaged in commerce or in the production of goods for commerce within the meaning of Section 29 U.S.C. §203(s)(1)(A)(i) and based upon information and belief formed after reasonably inquiry, satisfies the minimum annual gross sales dollar amount required by 29 U.S.C. §203(s)(1)(A)(ii).

6.     During all relevant times, Defendant TPLI was acting directly or indirectly in the interest of the employer in relation to the employee Plaintiffs and therefore, as defined under both the federal and state statutes relied upon, is an "employer."

7.     Defendant, **ORON GURIEL** is the owner and president of TPLI (any reference to "TPLI" in this Complaint shall include Guriel, such that "TPLI" encompasses and refers

---

[1] https://www.theprolock.com/

to all Defendants).

8. In his capacity as owner, president and operator of TPLI, Guriel was vested with the authority to implement and carry out the wage and hour practices of TPLI. Plaintiffs were directed to, and did, communicate all employment issues, including the wage and hour violations asserted herein, to Guriel, who in turn responded to those communications with the authority described above.

9. Thus, at all times relevant hereto, Guriel was acting directly or indirectly in the interest of the employer in relation to the employee Plaintiffs and therefore as defined under both the federal and state statutes relied upon, are each an "employer". and at all times relevant hereto were acting directly or indirectly in the interest of the employer in relation to the employee Plaintiffs and therefore as defined under both the federal and state statutes relied upon, are "employers".

10. Defendant, **GAL DRUCKER** is the co-owner, corporate secretary, and manager of TPLI (any reference to "TPLI" in this Complaint shall include Drucker, such that "TPLI" encompasses and refers to all Defendants).

11. In his capacity as co-owner and primary day-to-day manager of TPLI, Drucker was vested with the authority to implement and carry out the wage and hour practices of TPLI. Plaintiffs were directed to, and did, communicate all employment issues, including the wage and hour violations asserted herein, to Drucker, who in turn responded to those communications with the authority described above.

12. Thus, at all times relevant hereto, Drucker was acting directly or indirectly in the interest of the employer in relation to the employee Plaintiffs and therefore as defined under both the federal and state statutes relied upon, are each an "employer" and at all times

relevant hereto were acting directly or indirectly in the interest of the employer in relation to the employee Plaintiffs and therefore as defined under both the federal and state statutes relied upon, are "employers".

13. TPLI is a sister company of and otherwise associated with Quick Key, Inc. ("QKI"), another locksmith company owned by Defendants Nuriel and Drucker that operates in and around Chicago. Nuriel and Drucker (along with QKI) are currently Defendants in a near-identical wage case titled *Hadden, et al. v. Quick Key, Inc., et al.*, Case No. 21-cv-02746 currently pending before Hon. Matthew F. Kennelly.

14. TPLI's website indicates they are "partnered with" QKI.[2]

15. TPLI and QKI are both owned and operated by Defendants Oron Nuriel and Gal Drucker.[3]

16. Plaintiff, **LUIS GARCIA** is a former locksmith of Defendants who worked for TPLI from approximately August 2020 to October 2020.

17. Garcia was classified as a W2 employee during his tenure with TPLI.

18. Garcia performed locksmith duties as assigned by TPLI and their dispatchers.

19. During Garcia's entire employment, TPLI compensated Garcia on an improper salary basis and denied him overtime pay for hours worked over 40 per work week.

20. Defendants also failed to include commissions into the calculation of Garcia's regular rate of pay and corresponding overtime rate of pay, resulting in additional unpaid overtime wages.

---

[2] See again https://www.theprolock.com/ at bottom of page.
[3] In the related *Hadden* case, Defendants Nuriel and Drucker admit they owns and operate QKI, the sister and partner locksmith company of TPLI. See *Hadden*, 21-cv-02746 Dkt. 13, ¶4.

21. TPLI improperly deducted certain expenses from Garcia's pay (i.e., parking tickets) without receiving proper, contemporaneous authorization(s) from Garcia, including failure to use compliant deduction authorization forms.

22. Plaintiff, **ORLANDO PEREZ** is a former locksmith of Defendants who worked for TPLI from approximately September 2020 to November 2020.

23. Perez was classified as a W2 employee during his tenure with TPLI.

24. Perez performed locksmith duties as assigned by TPLI and their dispatchers. During Perez's entire employment, TPLI compensated Perez on an improper salary basis and denied him overtime pay for hours worked over 40 per work week.

25. Defendants also failed to include commissions into the calculation of Perez's regular rate of pay and corresponding overtime rate of pay, resulting in additional unpaid overtime wages.

26. TPLI improperly deducted certain expenses from Perez's pay without receiving proper, contemporaneous authorizations(s) from Perez, including failure to use compliant deduction authorization forms.

27. All other unnamed Plaintiffs, known and unknown (hereinafter referred to as "members of the Plaintiff Class" or "similarly situated Plaintiffs"), are past or present locksmith who:

    a. work or worked for Defendants;

    b. did not receive overtime pay for hours worked in excess of forty (40) in a work week;

    c. did not have their commissions factored into the calculation of their regular and corresponding overtime rates of pay; and

      d.    suffered unauthorized deductions from pay.

28. As employees performing duties for an enterprise engaged in commerce, the Named Plaintiffs and all members of the Plaintiff Class were also engaged in commerce as defined by the FLSA.

## IV. STATUTORY VIOLATIONS

### Fair Labor Standards Act

29. Pursuant to the Fair Labor Standards Act, 29 U.S.C. §216(b), Count I of this action is brought by Plaintiffs as an opt-in representative or collective action, on behalf of themselves and other Plaintiffs similarly situated who have been damaged by Defendants' failure to comply with 29 U.S.C. §201 *et seq.* and §251 *et seq.* Count II alleges a willful violation of the FLSA and seeks an additional third year of limitations. Count III seeks liquidated damages under the Fair Labor Standards Act, Section 260.

### Illinois Minimum Wage Law

30. Pursuant to the Illinois Minimum Wage Law, 820 ILCS §105/1 *et seq.*, Count IV of this action is brought by Plaintiffs to recover unpaid overtime back wages earned on or before the date three (3) years prior to the filing of this action. Each and every Plaintiff who joins this case in the future shall specifically adopt and assert the claims made under this Count IV. The claims asserted by Plaintiffs herein under the IMWL are proper for certification under Federal Rule of Civil Procedure 23.

### Chicago Minimum Wage Ordinance

31. Pursuant to the Chicago Minimum Wage Ordinance ("CMWO"), § 1-24-10 of the Municipal Code of Chicago, Count V of this action is brought by Plaintiffs to recover unpaid overtime back wages earned on or before the date three (3) years prior to the filing of this action. Each and every Plaintiff who joins this case in the future shall specifically adopt and assert the claims made under this Count V. The claims asserted by Plaintiffs herein under the CMWO are proper for certification under Federal Rule of Civil Procedure 23.

**Illinois Wage Payment and Collection Act**

32. Pursuant to the Illinois Wage Payment and Collection Act, 820 ILCS §115/1 *et seq*., Count VI of this action is brought by Plaintiffs to recover from Defendants unauthorized deductions taken on or after the date ten (10) years prior to the filing of this action. Each and every Plaintiff who joins this case in the future shall specifically adopt and assert the claims made under this Count VI. The claims asserted by Plaintiffs herein under the IWPCA are proper for certification under Federal Rule of Civil Procedure 23.

**V.      FACTUAL ALLEGATIONS RELEVANT TO ALL COUNTS**

33. Plaintiffs, at all times pertinent to the cause of action, worked for Defendants as locksmiths, whose work was integral and indispensable to Defendants' locksmith business.

34. Plaintiffs, on a regular basis within the dates of employment referenced above, worked in excess of forty (40) hours in a workweek without pay at a rate of time and one-half for such hours pursuant to the requirements of the federal, state and municipal statutes relied upon herein.

35. While employed by TPLI, Plaintiffs spent many of their working hours working for Defendants' benefit while within the City of Chicago, including at Defendants' shop located at 3400 N Kedzie Ave.

36. Additionally, many, if not most of, Plaintiffs' locksmith jobs were performed at residential and commercial locations within the City of Chicago as assigned by Defendants and their dispatchers.

37. Each month, Plaintiffs worked at numerous job sites and locations that were physically located within the City of Chicago.

38. On a regular basis, Plaintiffs worked at least two hours while physically present in the City of Chicago during two-week periods. Plaintiffs and putative class members were

at all times "Covered Employees" as defined by the CMWO.

39. Defendants, as a corporation and individuals employing "Covered Employees" as set forth above, were each an "Employer" as defined by the CMWO.

40. Additionally, because Defendants were operating and engaging in business by way of performance of professional trade services within the City of Chicago, they were subject to the license requirements set forth by the Municipal Code of Chicago.

41. Upon information and belief, TPLI was subject to City of Chicago licensing requirements and thus possessed the appropriate license to operate and perform locksmith services within the City of Chicago.

42. Plaintiffs were covered employees working for covered employers under the CMWO.

43. Garcia worked for TPLI from approximately August 2020 to October 2020.

44. During Garcia's entire tenure with TPLI, TPLI paid Garcia a salary. However, Garcia's job duties did not qualify him for any of the salary exemptions established by the FLSA, IMWL or CMWO.

45. Garcia worked as a locksmith. As a locksmith, Garcia performed generic, common locksmith duties (emergency lock-out services, installations, repairs, re-keying, etc.) for TPLI's residential and commercial customers.

46. Garcia's jobs were assigned to him on a rolling basis by TPLI and its dispatchers, who would inform Garcia of the customer's name, address and advise as to the work required. Garcia would then be expected to travel to each assignment.

47. Garcia was typically scheduled for 12-hour shifts six (6) days per week. The shifts were 7:00 a.m. to 7:00 p.m. or 9:00 a.m. to 9:00 p.m.

48. Garcia was not permitted to turn down any assignments given to him by a TPLI dispatcher. At times, Garcia worked in excess of his assigned 12-hour shift because TPLI required that Garcia answer to jobs assigned to him even at the very ends of his shifts (i.e. 6:55 p.m. or 8:55 p.m.), such that Garcia would work more than 12 hours on certain days.

49. Garcia typically worked 72 or more hours in a week but did not receive overtime compensation of one and one-half times his hourly rate of pay for such hours worked in excess of 40 in individual work weeks.

50. During Garcia's entire tenure with TPLI, Garcia was paid most of his compensation by salary. Throughout the duration of his employment, Garcia received approximately $833 every two weeks via payroll check.

51. In addition to his bi-monthly salary, Garcia also received commissions equal to approximately 10% of the revenues generated from all jobs completed within each pay period. The amounts of Garcia's commissions varied. These commissions were not factored into the calculation of Garcia's regular rate and corresponding overtime rate.

52. As a result of Defendants' improper salary classification, Garcia never received any compensation, let alone an overtime premium, for hours worked in excess of 40 in a work week.

53. Although Garcia worked at least 72 hours per week for the duration of his employment, TPLI did not keep contemporaneous records of the time worked by Garcia or other locksmiths that worked for them.

54. Instead, TPLI paid Garcia a fixed salary and inserted "0.00" in the "hours/units" column of Garcia's paystubs.

55. Additionally, TPLI made improper deductions from the pay of Garcia and other similarly situated locksmiths. TPLI would deduct their own business expenses and other amounts incurred by Garcia and other locksmiths while they performed locksmith duties on behalf of the Defendants.

56. TPLI routinely deducted items such as parking tickets, traffic citations, etc. without providing Garcia, or any other locksmiths, with a deduction authorization form as required by law and the IWPCA.

57. These deductions were reflected on Garcia's paystubs classified under the heading "Voluntary Deductions" as "Miscellaneous". However, these deductions executed by Defendants were not provided to Defendants by Garcia on a voluntary basis. Defendants executed the deductions without Garcia's consent by way of a compliant deduction authorization form.

58. Throughout the duration of Garcia's tenure with TPLI, he was paid an improper salary such that he did not receive overtime hours worked in excess of 40 in individual work weeks.

59. Perez was employed by TPLI from approximately September 2020 to November 2020.

60. During Perez's entire employment with TPLI, TPLI paid Garcia a salary. However, Perez's job duties did not qualify him for any of the salary exemptions established by the FLSA, IMWL or CMWO.

61. Perez worked as a locksmith. As a locksmith, Perez performed generic, common locksmith duties (emergency lock-out services, installations, repairs, re-keying, etc.) for TPLI's residential and commercial customers.

62. Perez's jobs were assigned to him on a rolling basis by TPLI and its dispatchers, who would inform Perez of the customer's name, address and advise as to the work required. Perez would then be expected to travel to each assignment.

63. Perez was typically scheduled for 12-hour shifts six (6) days per week. The shifts were 7:00 a.m. to 7:00 p.m. or 9:00 a.m. to 9:00 p.m.

64. Perez was not permitted to turn down any assignments given to him by a TPLI dispatcher. At times, Perez worked in excess of his assigned 12-hour shift because TPLI required that Perez answer to jobs assigned to him even at the very ends of his shifts (i.e. 6:55 p.m. or 8:55 p.m.), such that Perez would work more than 12 hours on certain days.

65. Perez typically worked at least 72 or more hours in a week but did not receive overtime compensation of one and one-half times his hourly rate of pay for such hours worked in excess of 40 in individual work weeks.

66. During Perez's entire employment, Perez was paid most of his compensation by salary. Throughout the duration of his employment, Garcia received approximately $833 every two weeks via payroll check.

67. In addition to his bi-monthly salary, Perez also received commissions equal to 10% of the revenues generated from all jobs complete within each pay period. The amounts of Perez's commissions varied. These commissions were not factored into the calculation of Perez's regular rate and corresponding overtime rate.

68. As a result of Defendants' improper salary classification, Perez never received any compensation, let alone an overtime premium, for hours worked in excess of 40 in a work week.

69. Although Perez worked at least 72 hours per week for the duration of his employment, TPLI did not keep contemporaneous records of the time worked by Perez or other locksmiths that worked for them.

70. Instead, TPLI paid Perez a fixed salary and inserted "0.00" in the "hours/units" column of Garcia's paystubs.

71. Additionally, TPLI made improper deductions from the pay of Perez and other similarly situated locksmiths. TPLI would deduct their own business expenses and other amounts incurred by Garcia and other locksmiths while they performed locksmith duties on behalf of the Defendants

72. TPLI routinely deducted items such as parking tickets, traffic tickets, etc. without providing Perez, or any other locksmiths, with a deduction authorization form as required by law and the IWPCA.

73. These deductions were reflected on Perez's paystubs classified under the heading "Voluntary Deductions" as "Miscellaneous". However, these deductions executed by Defendants were not provided to Defendants by Perez on a voluntary basis. Defendants executed the deductions without Perez's consent by way of a compliant deduction authorization form.

74. Throughout the duration of Perez's employment, he was paid an improper salary such that he did not receive overtime hours worked in excess of 40 in individual work weeks.

75. As detailed above, the Named Plaintiffs, nor any locksmith that worked for TPLI, performed duties that would satisfy any exemption permitted by the FLSA, IMWL or CMWO.

76. Rather, the Named Plaintiffs and locksmiths that worked for TPLI should have been paid hourly and received one and one-half their hourly rates of pay for all hours worked in excess of 40 in individual work weeks.

77. Further, commissions earned by the Named Plaintiffs and other locksmiths should have been considered in the calculations of their regular hourly rates of pay and, in turn, their corresponding overtime compensation as required by C.F.R. §778.117, 208.

78. The deductions Defendants took from the paychecks of the Named Plaintiffs and other locksmiths were illegal and non-compliant with the IWPCA.

79. Based upon information and belief of Garcia and Perez, TPLI paid all locksmiths via improper bi-monthly salary (with some commissions) rather than hourly rates with overtime compensation, failed to consider commissions in the calculations over regular and overtime rates of pay for all locksmiths, and improperly deducted wages from the paychecks of all locksmiths.

80. The total number of hours worked by Plaintiffs and members of the Plaintiff Class, and therefore the total number of overtime hours for which additional compensation is owed, is information substantially, if not completely, within the control and possession of Defendants, in that Defendants recorded or should have recorded such hours pursuant to the record keeping requirements found Title 29 CFR, Part 516.

81. To the extent Defendants lack the records required by 29 CFR Part 516, Plaintiffs and the Plaintiff class will be capable of providing reasonable estimates of that time, as permitted by law.

82. The claims brought herein by the Named Plaintiffs are based on non-compliant practices and policies implemented by the Defendants and are identical or similar to the

claims of other past and present employees who were subject to the same non-compliant policies and practices alleged herein.

83. Those past and present employees are entitled to receive Notice of these proceedings and afforded opportunity to join their individual claims.

## COUNT I

## VIOLATION OF FAIR LABOR STANDARDS ACT

1-83. Paragraphs 1 through 83 are re-alleged and incorporated as though set forth fully herein as paragraphs 1 through 83 of this Count I.

84. Pursuant to the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.*, the Named Plaintiffs, and all other Plaintiffs similarly situated, known and unknown, are entitled to compensation for all hours worked and compensation at a rate not less than one and one-half times the regular rate of pay for all hours worked in excess of forty (40) hours per workweek in any week during the two (2) years preceding the filing of this action.

85. Defendants have, during certain times relevant hereto, failed and refused to pay compensation to their employees including the Named Plaintiffs, and all other Plaintiffs similarly situated, known and unknown, as described above.

WHEREFORE, Plaintiffs, on behalf of themselves and all other Plaintiffs similarly situated, known and unknown, respectfully requests this Court to enter an order awarding:

(a) back pay equal to the amount of all unpaid overtime compensation for the two (2) years preceding the filing of this Complaint, according to the applicable statute of limitations;

(b) prejudgment interest with respect to the total amount of unpaid overtime compensation;

(c) Plaintiffs' reasonable attorneys' fees and costs incurred as a result of Defendants' violations of the Fair Labor Standards Act; and,

(d)  such additional relief as the Court deems appropriate under the circumstances.

## COUNT II

## WILLFUL VIOLATION OF THE FAIR LABOR STANDARDS ACT

1-85. Paragraphs 1 through 85 of Count I are realleged and incorporated as though set forth fully herein as Paragraphs 1 through 85 of Count II.

86. Defendants' actions as complained of above were done with Defendants' knowledge that the compensation policies and practices at issue were in violation of the statutes alleged, or with a reckless disregard for whether the policies and practices were in violation of those statutes. Through legal counsel as well as industry experience and custom, Defendants possessed ample access to the regulations and statutory provisions relating to salary classification under the state and federal laws recited herein, but either failed to seek out such information and guidance or did seek out the information and guidance but failed to adhere to the principles of compliance as stated.

87. Pursuant to the Fair Labor Standards Act, Plaintiffs and all other employees similarly situated, past or present, are entitled to compensation at a rate not less than one and one-half times their regular rates of pay for all hours worked in excess of forty (40), in the three (3) years preceding the filing of this complaint.

WHEREFORE, Plaintiffs, on behalf of themselves and all other Plaintiffs similarly situated, known and unknown, respectfully requests this Court to enter an order awarding: back pay equal to the amount of all unpaid compensation for one (1) additional year, totaling three (3) years preceding the filing of this Complaint;

(a)  prejudgment interest with respect to the amount of unpaid overtime compensation;

(b)  Plaintiffs' reasonable attorneys' fees and Court costs incurred as a result of Defendants' violation of the Fair Labor Standards Act; and

(c)  such additional relief the Court deems appropriate under the circumstances.

## COUNT III

### LIQUIDATED DAMAGES
### UNDER THE FAIR LABOR STANDARDS ACT

1-87.  Paragraphs 1 through 87 of Count II are re-alleged and incorporated as though set forth fully herein as Paragraphs 1 through 87 of Count III.

88.  In denying the named Plaintiffs and members of the Plaintiff Class compensation as described above, Defendants' acts were not based upon good faith or reasonable grounds. Through legal counsel as well as industry experience and custom, Defendants possessed ample access to the regulations and statutory provisions relating to salary classification under the state and federal laws recited herein, but either failed to seek out such information and guidance or did seek out the information and guidance but failed to adhere to the principles of compliance as stated.

89.  The named Plaintiffs and all other past and present employees similarly situated, known and unknown, are entitled to liquidated damages equal to the amount of all unpaid compensation, pursuant to 29 U.S.C. §260.

WHEREFORE, Plaintiffs, on behalf of themselves and all other Plaintiffs similarly situated, known and unknown, respectfully requests this Court to enter an order awarding:

(a)  liquidated damages equal to the amount of all unpaid compensation;

(b)  Plaintiffs' reasonable attorneys' fees and costs incurred as a result of Defendants' violation of the Fair Labor Standards Act; and

(c)  such additional relief the Court deems appropriate under the circumstances.

## COUNT IV

## SUPPLEMENTAL STATE LAW CLAIM
## VIOLATION OF THE ILLINOIS MINIMUM WAGE LAW

1-89. Paragraphs 1 through 89 of Count III are re-alleged and incorporated as though set forth fully herein as Paragraphs 1 through 89 of this Count IV.

90. As described in the foregoing paragraphs, Defendants' compensation policies and practices are in violation of the Illinois Minimum Wage Law, 820 ILCS §115/1 *et seq.*

91. The Illinois Minimum Wage Law provides that an employer who fails to pay the required amount of wages due an employee under the law shall be liable to the underpaid employee or employees for the unpaid wages and for (a) an additional statutory interest penalty of 2% amount of the amount of such underpayments for each month following the date such underpayments that remain unpaid through February 18, 2019 and (b) treble the amount of the underpayments and a statutory interest penalty in the amount of 5% of the underpayments each month for damages incurred thereafter.

92. Defendants' failure to pay compensation as described above, has been willful and/or in bad faith.

93. Plaintiffs seek certification of the Illinois Minimum Wage Law violations alleged herein pursuant to Federal Rule of Civil Procedure 23.

WHEREFORE, Plaintiffs, on behalf of themselves and all other Plaintiffs similarly situated, known and unknown, respectfully requests this Court to enter an order:

(a) declaring and decreeing Defendants' compensation practices as described herein, and such other violations which may come to light during the prosecution of this matter, in violation of the provisions of the Illinois Minimum Wage Law;

(b) awarding an amount of damages, to be shown by the evidence, to which Plaintiffs and other members of the Plaintiff Class are entitled;

(c) allowing this Court to retain jurisdiction of the case until such time it is assured Defendant has remedied the compensation policies and practices complained of herein and are determined to be in full compliance with the law;

(d) directing Defendants to pay to Plaintiffs' reasonable attorneys' fees, costs, and litigation expenses, as provided by statute;

(e) for such additional relief the Court deems just and appropriate under the circumstances.

## COUNT V

### SUPPLEMENTAL MUNICIPAL CLAIM
### VIOLATION OF THE CHICAGO MINIMUM WAGE ORDINANCE

1-93. Paragraphs 1 through 93 of Count IV are re-alleged and incorporated as though set forth fully herein as Paragraphs 1 through 93 of this Count V.

94. Plaintiffs, and members of the Plaintiff Class, are each an "employee" under the CMWO§ 1-24-10 of the Municipal Code of Chicago and not exempt from the overtime wage provisions of the CMWO § 6-105-010.

95. Defendants are each an "employer" as defined in the CMWO§ 6-105-010.

96. Under § 6-105-040, for all weeks during which Plaintiffs and members of the Plaintiff Class worked more than forty (40) hours in the three (3) years preceding the filing of this Complaint, they were entitled to be compensated at a rate of one and one-half times their regular hourly rates of pay.

97. Defendant's failure and refusal to pay overtime wages for hours worked in excess of 40 per week was a violation of the maximum hour provisions of § 6-105-040.

98. Plaintiffs seeks certification of the Chicago Minimum Wage Ordinance violations alleged herein pursuant to Federal Rule of Civil Procedure 23 as to all similarly situated locksmiths that performed work within the City of Chicago as covered employees for a covered employer, as alleged herein.

WHEREFORE, Plaintiffs, on behalf of themselves and all other Plaintiffs similarly situated, known and unknown, respectfully requests this Court to enter an order awarding:

(a) Judgment in the amount of unpaid overtime compensation found due at the rate of one and one-half times Plaintiffs' regular hourly rate of pay for all hours which Plaintiff and members of the Plaintiff Class worked in excess of forty (40) hours per week;

(b) Statutory damages in the amount of three times the amount of unpaid overtime;

(c) Reasonable attorneys' fees and costs incurred in filing and prosecuting this action; and

(d) Such other and further relief as this Court deems appropriate and just.

## COUNT VI

## SUPPLEMENTAL STATE LAW CLAIM
## VIOLATION OF THE ILLINOIS WAGE PAYMENT AN COLLECTION ACT

1-98. Paragraphs 1 through 98 of Count V are re-alleged and incorporated as though set forth fully herein as Paragraphs 1 through 98 of this Count VI.

99. Plaintiffs, and members of the Plaintiff Class, were each an "employee" under the IWPCA, 820 ILCS § 115/2.

100. Plaintiffs, and members of the Plaintiff Class, were not exempt from the IWPCA's protections, 820 ILCS § 115/1, *et seq*.

101. Defendants were each an "employer" under the IWPCA, 820 ILCS § 115/2.

102. During the course of employment of the Named Plaintiffs and the Plaintiff class, Defendants made deductions from Plaintiffs' wages for traffic and parking tickets, tools and other similar costs.

103. Such deductions (1) were not required by law; (2) were not to the benefit of the Named Plaintiffs or the Plaintiff Class; (3) were not in response to a valid wage assignment or wage deduction order; and (4) were not made pursuant to a valid and compliant authorization form, signed and dated by the Named Plaintiffs or members of the Plaintiff Class.

104. Defendants violated the IWPCA, 820 ILCS 115/9, by making unauthorized and unlawful deductions from wages.

105. Plaintiffs were damaged by Defendants' violation of the IWPCA.

106. Plaintiffs seeks certification of the IWPCA violations alleged herein pursuant to Federal Rule of Civil Procedure 23.

WHEREFORE, Plaintiffs, on behalf of themselves and all other Plaintiffs similarly situated, known and unknown, respectfully request this Court to enter an order awarding them:

(a) A judgment in an amount to be determined at trial for all of the earned wages, agency withholding deposits and final compensation due to Plaintiffs;

(b) Statutory interest damages in the amount of two percent (2%) per month of the amount of underpayments;

Respectfully submitted,

*Electronically Filed 02/24/2022*

/s/ Samuel D. Engelson
_____
Samuel D. Engelson

John W. Billhorn
Samuel D. Engelson
Attorney for Plaintiffs, and all other
Plaintiffs similarly situated, known or
unknown.

BILLHORN LAW FIRM
53 West Jackson Blvd., Suite 401
Chicago, IL 60604
(312) 853-1450